# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GENESIS CAPITAL, LLC, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| AGENTS FIRST REAL ESTATE LLC, d/b/a | : |
| KELLER WILLIAMS PHILADELPHIA, | : |
| | : |
| EMPOWER REAL ESTATE LLC, d/b/a | : |
| KELLER WILLIAMS PHILADELPHIA, | : |
| | : Civil Action No. 25-CV-2649 |
| GO KW LLC, d/b/a KELLER WILLIAMS | : |
| PHILADELPHIA, | : |
| | : |
| KELLER WILLIAMS EMPOWER, LLC d/b/a | : **COMPLAINT** |
| KELLER WILLIAMS PHILADELPHIA, *and* | : |
| | : |
| SURETY ABSTRACT SERVICES, LLC, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |
| | : |
| | : |

Francis J. Lawall (PA Bar No. 43932)
Richard J. Zack (PA Bar No. 77142)
Zachary R. Epstein (PA Bar No. 330713)
Julian Newton Weiss (PA Bar No. 329232)
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

*Counsel for Plaintiff Genesis Capital, LLC*

## COMPLAINT

1.     Plaintiff Genesis Capital, LLC ("Genesis" or "Plaintiff"), by and through undersigned counsel, files this complaint against defendants Agents First Real Estate LLC, Empower Real Estate LLC, and Go KW LLC, collectively d/b/a "Keller Williams," and Surety Abstract Services, LLC ("Surety Abstract," and together with Keller Williams, "Defendants"), and alleges as follows:

## INTRODUCTION

2.     Surety Abstract, a licensed title agency, and Keller Williams, a licensed real estate broker, participated in a lengthy and extensive loan fraud scheme that inflated the value of co-conspirator Travis Robert-Ritter's real estate assets so that Robert-Ritter could obtain millions of dollars in loans from Genesis, a commercial lender, under false pretenses.  In exchange, Surety Abstract received hundreds of thousands of dollars in fees for title and other business from Robert-Ritter.  Also, Robert-Ritter promised illicit cash payments to Keller Williams personnel in exchange for their assistance.  As a result of the loan fraud scheme, Genesis lost nearly $10 million when Robert-Ritter's real estate development business collapsed and his assets could not cover the losses.

## PARTIES, JURISDICTION, AND VENUE

3.     Genesis is a Delaware limited liability company authorized to do business in the Commonwealth of Pennsylvania, with an address of 15303 Ventura Boulevard, Suite 700, Sherman Oaks, CA 91403.

4.     Defendant Agents First Real Estate LLC d/b/a Keller Williams Philadelphia is a Pennsylvania limited liability company and a franchise of KW Realty Group, Inc., with an address of 107 S. 2nd Street, 3rd Floor, Philadelphia, PA 19106. Keller Williams Philadelphia is a

registered fictitious name for Agents First Real Estate LLC with the Pennsylvania Department of State.

5.    Defendant Empower Real Estate LLC d/b/a Keller Williams Philadelphia is a Pennsylvania limited liability company and franchise of KW Realty Group, Inc., with an address of 151 East 10th Avenue, Conshohocken, PA 19428. Keller Williams Philadelphia is a registered fictitious name for Empower Real Estate LLC with the Pennsylvania Department of State.

6.    Defendant GO KW LLC d/b/a Keller Williams Philadelphia is a Pennsylvania limited liability company and franchise of KW Realty Group, Inc., with an address of 107 S. 2nd Street, 3rd Floor, Philadelphia, PA 19106. Keller Williams Philadelphia is a registered fictitious name for GO KW LLC with the Pennsylvania Department of State.

7.    Defendant Surety Abstract Services, LLC, is a New Jersey limited liability company and a licensed title agency and insurer with an address of 107 S. 2nd Street, Suite 200, Philadelphia, PA 19106.

8.    This Court has federal jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and all Defendants are citizens of different States and the amount in controversy exceeds $75,000.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of this district for venue purposes and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## FACTS

10.    Robert-Ritter operated a business that purchased cheap single-family homes in Philadelphia with the help of Keller Williams and Surety Abstract and rehabilitated them into, among other things, three-unit rentals. He financed his business with loans from lenders like

Genesis. These loans were secured by properties Robert-Ritter owned.  Surety Abstract closed hundreds of real estate transactions for Robert-Ritter, handling millions of dollars on his behalf.

11.     Together, the Defendants manufactured sham home sales to artificially inflate the value of Robert-Ritter's properties so that his real estate holdings would falsely reflect adequate collateral for loans of approximately $9.6 million in the aggregate from Genesis.  Robert-Ritter's assets were worth a fraction of that amount. Therefore, he needed to artificially inflate the value of his real property to fraudulently secure the maximum loan amount from Genesis. To do that, he enlisted Surety Abstract and Keller Williams.

12.     Keller Williams and Surety Abstract are both required by Pennsylvania law to act honestly in real estate dealings.

13.     Keller Williams and its affiliates are licensed by the Pennsylvania Real Estate Commission.  Accordingly, Keller Williams and its affiliates are prohibited from "knowingly be[ing] a party to a material false or inaccurate representation in a writing regarding a real estate transaction in which [it] is acting in a representative capacity."  49 Pa. Code. § 35.282(b).  Likewise, its employees, agents, and affiliates had a duty to be "honest and truthful in their real estate communications and shall present a true picture in their advertising, marketing, and other representations." *Code of Ethics and Standards of Practice of the National Association of Realtors* Article 12 (Duties to the Public).  Further, they were required to "avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property or the transaction." *Id.* Article 2.

14.     As a title agency whose agents must be licensed by the Pennsylvania Insurance Department, Surety Abstract is regulated by the Pennsylvania Unfair Insurance Practices Act (40 P.S. § 1171 *et seq.*) under Article VII of the Pennsylvania Statutes.  *See* 40 P.S. § 910-54(10).

Accordingly, its agents are prohibited from "engag[ing] in this state in any trade practice which is defined or determined to be an unfair method of competition or unfair or deceptive act or practice in the business." *See* 40 P.S. § 1171.4. Further, Surety Abstract's agents are prohibited from "[m]aking, issuing, publishing or circulating in any manner [a] . . . statement containing any representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading." *See id.* at § 1171.1(a)(2)). Title agents are also prohibited from "[f]urnishing or offering to furnish all or any part of the time or productive effort of any employee of the title insurance company or title insurance agent to any person for any service unrelated to the title business." *See id.* at § 910-31(b)(6).

15.     The Defendants and Robert-Ritter went to great lengths to conceal their fraudulent scheme by, among other things:  (a) creating false and misleading documents and filing them publicly; (b) making, and causing to be made, false and misleading representations to Genesis and professionals hired by Genesis in connection with the relevant transactions; (c) using the names of individual and corporate nominees controlled by Robert-Ritter to conceal the Defendants' and Robert-Ritter's connection with fraudulent transactions; (d) violating the Defendants' normal practices and procedures regarding preparation and notarization of documents related to the transactions; and (e) obstructing Genesis' efforts to learn of the fraudulent scheme by, among other things, testifying falsely under oath in proceedings to aid in collecting Genesis' judgment against Robert-Ritter.

## A.  The 2020 Creation of Fraudulent "Comparable Sales"

16.     In approximately 2019, Robert-Ritter retained Surety Abstract to conduct real estate closings, and to provide title and other services.  This shared business grew and continued

through late-2022, with at least one Surety Abstract employee speaking with Robert-Ritter nearly every day during this period. Surety Abstract conducted hundreds of transactions for Robert-Ritter, virtually all of them real estate purchases. Through this close working relationship, Surety Abstract became intimately familiar with Robert-Ritter's business and the identities of his key employees. Robert-Ritter's business was so significant that it required several Surety Abstract employees to service it.

17.    In mid-2020, Robert-Ritter sought millions of dollars of funding for his real estate business and personal expenses. Surety Abstract had already been working with him for several months. Being unable to obtain sufficient funds based on a true valuation of his properties, the Defendants set out to inflate their values.

18.    To carry out this scheme, there were several pieces that had to be put in place. First, Robert-Ritter had to acquire low-priced properties and inflate their value. To do so, he needed the assistance of a title company to document fraudulent transactions and a real estate broker to place the fraudulent sales in the public databases so that appraisers and others would see and rely upon the inflated values. Once all the steps occurred, Robert-Ritter could then borrow against other properties which he owned and direct the appraiser to the falsified and inflated sale transactions for use as comparable properties, also referred to as "comps," to justify a higher loan value to the unwitting lender. Surety Abstract participated in that scheme by, among other things, preparing and publicly recording fraudulent documents with grossly inflated values. Keller Williams participated by, among other things, knowingly listing the falsified sale transactions on the Multiple Listing Service or "MLS."

19.    To execute the first phase of his scheme, in late Summer and early Fall 2020, Robert-Ritter, through six limited liability entities, purchased the six low-priced properties listed below in North Philadelphia:

| **Address** | **Date of Purchase** | **Price** | **Purchaser Entity** |
|---|---|---|---|
| 241 E. Indiana Ave. | August 13, 2020 | $28,000 | 241 E Indiana LLC |
| 3227 Hurley St. | August 24, 2020 | $44,000 | 3227 Hurley LLC |
| 2726 N. Dover St. | September 14, 2020 | $48,000 | 2726 N Dover LLC |
| 2054 W. Stella St. | October 14, 2020 | $67,000 | 2054 W Stella LLC |
| 2716 N. Hicks St. | October 19, 2020 | $40,000 | CLHR I LLC |
| 332 E. Somerset St. | November 11, 2020 | $70,000 | 332 E Somerset LLC |

20.    When Robert-Ritter purchased these properties with the assistance of Surety Abstract, he intended to use them to create future fictitious sales transactions between entities he controlled with inflated sales prices.  Robert-Ritter could then point out these inflated prices to appraisers and convince the appraisers to rely on them as comparable transactions in determining the value of his properties.  Robert-Ritter's intention was to create fictitious sale transactions at prices of up to twelve times the properties' actual values.  Both Surety Abstract and Keller Williams agreed to assist Robert-Ritter in his plan.

21.    Shortly after Robert-Ritter purchased the properties at the low prices listed above, Robert-Ritter contacted Surety Abstract to participate in the scheme.  He advised a Surety Abstract employee that he wanted the public record to show that each of the properties had subsequently "sold" for the price of approximately $350,000.  Robert-Ritter advised the Surety Abstract employee that the "buyers" in these fake sales would be entities he had recently formed, but that to conceal his connection to the properties and the fake sales, he would not use his usual address

or name in connection with these new entities. Specifically, Robert-Ritter used 4387 W. Swamp Road, Suite 515, Doylestown, PA 18902, as his business address on virtually all the transactions that he conducted with Surety Abstract, but Robert-Ritter and Surety Abstract agreed that they would not use this address on any of the properties. They also agreed to use other individuals' names unconnected to Robert-Ritter on the fake sales related to the properties. Lastly, Robert-Ritter advised the Surety Abstract employee that no money would change hands and that he would pay all the fees associated with the fake sales.

22.     Given the foregoing, there is no question Surety Abstract knew the transactions Robert-Ritter was proposing were fake. For one, Surety Abstract had conducted the closings for the properties for just a fraction of the proposed sales prices only a few weeks before. Moreover, Surety Abstract knew there were no real buyers and that the proposed "buyers" were simply entities created by Robert-Ritter that were made to look unconnected to him. Nonetheless, the Surety Abstract employee agreed to assist Robert-Ritter in documenting the false transactions.

23.     Surety Abstract prepared and recorded deeds reflecting the proposed fake sales so that, on paper, it would look like each of the properties legitimately sold for approximately $350,000 only a short time after Robert-Ritter had purchased them at the low prices stated above. Surety Abstract knew that by recording the deeds, it was concealing the true nature of the transactions, knowing that the public record would falsely show what appeared to be arm's-length transactions.

24.     In reality, Surety Abstract had actually facilitated straw conveyances of the properties from entities controlled by Robert-Ritter to other entities controlled by Robert-Ritter, and no money changed hands, except what was paid to Surety Abstract for its participation in the scheme. Robert-Ritter wanted deeds showing they were prepared by a title agency, with the title

agency's name and imprimatur of legitimacy on them. Surety Abstract accommodated this request and agreed to record the deeds without including Robert-Ritter's name as either the buyer or seller, thereby concealing his involvement in the scheme.

25.     Next, Robert-Ritter needed to publicly broadcast the fake sales so that appraisers would view and rely upon them as comparable sales when valuing his properties.  In other words, he could only exploit the fake sales if they were published in easily accessible public databases, making them appear like ordinary sales.  This is when Robert-Ritter enlisted Keller Williams for its role in the scheme, which was to publish the fake sales in a public database, such as the Multiple Listing Service.  Importantly, only licensed real estate brokers, and not developers like Robert-Ritter, are permitted to make entries in these public databases, which is why Robert-Ritter required the participation of Keller Williams.  The MLS system in the Philadelphia area is known as "Bright/MLS."  Robert-Ritter and Keller Williams' agents spoke about creating real estate listings in Bright/MLS and Keller Williams agreed to publish the fake sales in Bright/MLS showing "sales prices" of approximately $350,000 for each property (as much as twelve time the purchase price only several weeks prior) and further asserting that the properties had sold almost immediately upon being listed. To support the high purchase prices it was publishing, Keller Williams personnel described the properties as recently renovated investment opportunities.  Shockingly, Keller Williams personnel even posted fraudulent photos onto the listings that were taken from *other* properties, all of which were supplied by Robert-Ritter.  In fact, as Keller Williams personnel knew, none of the properties had been renovated, but in exchange for publishing the fake sales, Robert-Ritter offered Keller Williams personnel illicit under-the-table cash payments.

26.     Specifically, Keller Williams published on Bright/MLS the following "sales," all of which were fabricated and never actually occurred (the "2020 Fraudulent Sales"):

| Address | Date of Transfer | Listed Sales Price | Orig. Price |
|---------|------------------|--------------------|-------------|
| 241 E. Indiana Ave. | December 21, 2020 | $350,000 | $28,000 |
| 2054 W. Stella St. | December 21, 2020 | $346,000 | $67,000 |
| 2726 N. Dover St. | December 21, 2020 | $351,000 | $48,000 |
| 3227 Hurley St. | December 21, 2020 | $346,000 | $44,000 |
| 2716 N. Hicks St. | December 17, 2020 | $352,000 | $40,000 |

27.     The Keller Williams agent who published the 2020 Fraudulent Sales on the Bright/MLS reported directly to the Keller Williams Broker of Record Vicki Carey.  As Keller Williams' broker of record, Carey is responsible for all of the agency's real estate transactions and, as she testified under oath, the "buck stops with [Carey]" regarding all matters related to real estate listings.  Carey is also listed as the broker of record on all the Fraudulent Sales (defined below) referenced in this complaint.  She has also testified under oath that she was "responsible" for all of them.

28.     Specifically, Carey testified that she was responsible for all Keller Williams listings entered into Bright/MLS, including the ones referred to above.  Keller Williams personnel only had access to Bright/MLS because of their employment at Keller Williams and were required to include their relationship with Keller Williams and their contact information in all listings.

29.     Carey is an experienced real estate professional knowledgeable about values in particular neighborhoods in the Philadelphia area. Carey testified under oath that it was impossible for the properties listed above to suddenly be worth roughly $350,000 each, mere weeks after they sold for between $28,000 and $70,000.  She testified sarcastically that they would have needed to be renovated by a crew of "25 men in there, seven days a week for 24 hours."  In sum, as Carey

knew, the values of the properties were not worth the sale prices that Keller Williams published on Bright/MLS.

30.    When Keller Williams personnel entered the information of the 2020 Fraudulent Sales into Bright/MLS, they admittedly knew it was false, and that the information would be viewed by the public and relied upon by real estate appraisers.  Keller Williams personnel and Robert-Ritter discussed this scheme before and after the 2020 Fraudulent Sales were entered into Bright/MLS.

31.    The Surety Abstract employee who handled recording of the deeds was an experienced and licensed title agent and notary, familiar with the purposes of public recording in the Philadelphia real estate market; she knew that the 2020 Fraudulent Sales were shams. The employee caused Surety Abstract to pay the recording fees and transfer taxes associated with the 2020 Fraudulent Sales, for which Robert-Ritter reimbursed Surety Abstract.  Surety Abstract also ensured that only the deeds were publicly recorded and that none of the documents showing Robert-Ritter's involvement on both sides of the 2020 Fraudulent Sales or that no money changed hands were ever made public.

32.    Both Keller Williams and Surety Abstract failed to act with reasonable diligence and participated in the 2020 Fraudulent Sales despite unmistakable evidence of fraud. The Keller Williams and Surety Abstract representatives were experienced professionals who had handled hundreds of real estate transactions.  Both were familiar with the Philadelphia area, the homes in it, and their values.  They also had access to material nonpublic information, including that Robert-Ritter controlled both sides of the 2020 Fraudulent Sales, wanted to conceal his connection to the transactions, that no money would be changing hands, and that the information in the listings and deeds was not accurate.

33.     In approximately September 2021, the Keller Williams personnel who had made the fraudulent entries into Bright/MLS became concerned that they would be questioned about the publication of the 2020 Fraudulent Sales and asked Robert-Ritter for documents they could use to justify them.  Surety Abstract prepared false settlement statements, known as "Form HUD-1s" for several of the properties and supplied them to Robert-Ritter.  Robert-Ritter provided such fabricated Form HUD-1s to Keller Williams and advised that they should change the dates to conform to the information in the fraudulent Bright/MLS listings.

34.     Surety Abstract profited handsomely from its relationship with Robert-Ritter. Following Surety Abstract assisting Robert-Ritter in creating these false records in 2020, Robert-Ritter became one of Surety Abstract's largest customers, paying Surety Abstract hundreds of thousands of dollars in fees between 2020 and 2022.  Surety Abstract's owners received monthly reports showing the volume of business Robert-Ritter conducted with and the payments to Surety Abstract.

**B.  The 2022 Creation of Fraudulent Comparable Sales**

35.     Having succeeded in creating false records in 2020 so Robert-Ritter could obtain loans under false pretenses, the coconspirators used the same properties a second time.  In early 2022, Robert-Ritter was seeking millions of dollars of additional financing for his real estate development business and contacted Genesis.  Robert-Ritter made numerous false statements to Genesis regarding his finances and the value of his properties.

36.     Robert-Ritter applied for nearly $10 million in loans from Genesis which Genesis required be secured by some of Robert-Ritter's real estate with a value in excess of the loan amount.  Robert-Ritter knew that Genesis would obtain an independent appraisal of any properties that would be used as security for the loans and because he knew his properties were not worth

nearly enough to act as sufficient collateral for the Genesis loans, Robert-Ritter and Keller Williams agreed to fabricate new sales transactions and publish false sales information on Bright/MLS in order to create comparable properties that could be used by an appraiser to inflate the value of Robert-Ritter's properties.  Once again, Surety Abstract agreed to conspire and conceal the fraudulent scheme.

37.    Specifically, in Spring 2022, Robert-Ritter again enlisted Keller Williams to enter false sales information in Bright/MLS. Like they had done in 2020, Keller Williams uploaded and published false sales information purporting to show that the same six properties had sold again in 2022, each for approximately $350,000 (the "2022 Fraudulent Sales").  This false information also asserted that the properties had sold almost immediately after being listed.  Keller Williams agreed to Robert-Ritter's request to list for sale the same properties that Keller Williams had listed for sale by Robert-Ritter just two years prior.  Keller Williams personnel agreed to upload and publish the 2022 Fraudulent Sales in May 2022, which they knew would be relied upon by real estate appraisers. Again, Keller Williams made it appear that the 2022 Fraudulent Sales described in the listings actually closed when, in fact, they had not.  Keller Williams included sale prices, closing dates, and Keller Williams employment and contact information.  Carey was listed as the "broker of record" for these listings and was responsible for them.  The details of the 2022 Fraudulent Sales included in Bright/MLS are below:

| Address | Date of Transfer | Listed Sales Price | Orig. Price |
| --- | --- | --- | --- |
| 241 E. Indiana Ave. | May 26, 2022 | $351,000 | $28,000 |
| 2054 W. Stella St. | May 26, 2022 | $347,000 | $67,000 |
| 2726 N. Dover St. | May 31, 2022 | $348,000 | $48,000 |
| 3227 Hurley St. | May 26, 2022 | $350,000 | $44,000 |

| | | | |
|---|---|---|---|
| 2716 N. Hicks St. | May 31, 2022 | $350,000 | $40,000 |
| 332 E. Somerset Ave. | June 1, 2022 | $348,000 | $70,000 |

38.     The coconspirators did not record these transactions with the Philadelphia Recorder of Deeds and the only information on the 2022 Fraudulent Sales available to the public was in Bright/MLS and other public databases, falsely showing that the properties each sold in 2022 for the false prices listed above.   As Keller Williams knew, Robert-Ritter supplied these 2022 Fraudulent Sales from Bright/MLS to an appraiser hired by Genesis to value the 39 properties owned by Robert-Ritter that he proposed to pledge as collateral for the Genesis loans (the "Genesis Collateral Properties").   He did this so that the appraiser could, and would, use the 2022 Fraudulent Sales as comparable sales for purposes of valuing the Genesis Collateral Properties.

39.     Indeed, per Robert-Ritter's suggestion, the appraiser used the 2022 Fraudulent Sales as comparable properties and valued the Genesis Collateral Properties at more than $13 million.   Robert-Ritter and Keller Williams personnel discussed this corrupt purpose before publishing the 2022 Fraudulent Sales on Bright/MLS.   In reality, Robert-Ritter purchased the Genesis Collateral Properties for prices of between $30,000 and $115,000 in 2020 through 2021, at an average sale price of around $66,000 per home, about 20 percent of the values falsely claimed by Keller Williams via Bright/MLS and fraudulently supplied by Robert-Ritter to the appraiser hired by Genesis.

40.     Genesis relied on the appraisals that valued the Genesis Collateral Properties at more than $13 million and approved loans to Robert-Ritter of approximately $9.6 million.   The Genesis loans were scheduled to close in August and October 2022.   Robert-Ritter enlisted Surety Abstract to handle the closings.   Surety Abstract agreed to serve as closing agent and to obtain title insurance to protect Genesis' interest in the Genesis Collateral Properties.   Accordingly, Surety

Abstract owed Genesis various duties, including a duty to provide complete and accurate information about the fraudulent comparable properties and its knowledge of Robert-Ritter's connections to them.

41.    Before either of the Genesis loans closed, in June 2022, Surety Abstract and Robert-Ritter executed a scheme to defraud Rehab Financial Group ("RFG"), another of Robert-Ritter's lenders.  Robert-Ritter had defaulted on an approximately $5 million loan made by RFG which had been secured by various properties owned by Robert-Ritter.  RFG and Robert-Ritter arranged for the sale of these properties to cover part of the amount that Robert-Ritter owed to RFG.  The proceeds of these sales were supposed to be paid to RFG.  Instead, Surety Abstract and Robert-Ritter engaged in a scheme to improperly divert the bulk of the proceeds to Robert-Ritter funneled through various shell corporations and nominees.  In total, Surety Abstract improperly diverted more than $1.5 million from RFG to Robert-Ritter.

42.    In June 2022, RFG representatives confronted Surety Abstract when they realized the money due to them had been diverted.  RFG representatives explained to Surety Abstract that they were entitled to the more than $1.5 million that Robert-Ritter diverted to himself.  Because Surety Abstract and Robert-Ritter had been involved in a fraud scheme for more than two years, Surety Abstract did not respond to RFG.  Rather, in June 2022, senior representatives of Surety Abstract, including its owners and senior vice president for business development, agreed with Robert-Ritter that they would continue to do business together so that each of them could continue to profit from the scheme to defraud.  Surety Abstract's owners decided not to disclose the scheme or terminate their relationship with Robert-Ritter because doing so would impair their ability to profit from the scheme.

43.     Just a few weeks later, in August 2022, Surety Abstract closed the first Genesis loan to Robert-Ritter.  In violation of their duty to its insured, Genesis, Surety Abstract concealed the fact that it was engaged in a fraud scheme with Robert-Ritter.  It also did not disclose the true nature of the 2022 Fraudulent Sales. Notwithstanding all of the foregoing misdeeds, in October 2022, Surety Abstract closed a second Genesis loan to Robert-Ritter, again concealing Surety Abstract and Robert-Ritter's fraud scheme from Genesis.

44.     In July 2023, Robert-Ritter stopped making payments to Genesis and has not made any payments on the loans since.  Robert-Ritter defaulted on the Genesis loans but also discontinued management of the Genesis Collateral Properties, causing additional damage and cost to Genesis.  Robert-Ritter abandoned his business in complete disarray, with his tenants, partners, lenders and other vendors left holding the bag.  Following the appointment of a receiver ("the Receiver") over the Genesis Collateral Properties in connection with litigation Genesis brought against Robert-Ritter, tenants of the Genesis Collateral Properties sought to have their utilities turned back on and water damage fixed. Robert-Ritter's failure and abandonment of his business caused significant damage to the Genesis Collateral Properties and, in turn, Genesis' security for the loans.

45.     Through 2024, Surety Abstract, Keller Williams, and Robert-Ritter continued to conceal their scheme from Genesis.  Genesis discovered the fraudulent scheme only in early 2025 when Genesis learned the Genesis Collateral Properties were significantly overvalued, that selling them would not cover the outstanding balance on the loans, and that Surety Abstract and Keller Williams had engaged in efforts to create the 2020 Fraudulent Sales and the 2022 Fraudulent Sales.

46.     The Receiver was able to take control of the Genesis Collateral Properties and prepare them for sale.  However, the Receiver reported there was no market for the Genesis

Collateral Properties anywhere near the appraised values, a revelation that only makes sense now after Genesis learned that the appraised values were all based off fraudulent information.  In February 2024, the Receiver obtained an offer to purchase all 39 Genesis Collateral Properties for less than $2 million—$7.6 million less than the value of the loans, and over $10 million less than the Genesis Collateral Properties' appraised value.

47.    Keller Williams and Surety Abstract's participation in the fraudulent schemes over several years is the direct cause of Genesis' losses.

## CAUSES OF ACTION

### COUNT ONE
### FRAUD
### (vs. All Defendants)

48.    Genesis incorporates by reference all prior allegations of this Complaint.

49.    The Defendants knew that lenders like Genesis rely on property appraisals based on comparable sales in order to value real property used as security in loan transactions, and that appraisers gather information on comparable sales from what is listed on Bright/MLS and what is of record in recorded deeds.

50.    The Defendants also knew, or should have known, that the 2020 Fraudulent Sales and the 2022 Fraudulent Sales were all intraparty straw sales that should not have been published as legitimate arms-length transactions on Bright/MLS.

51.    Surety Abstract knew, or should have known, that the 2020 Fraudulent Sales were all intraparty straw sales without any consideration and should never have been documented and recorded in public records with sales prices of near $350,000 each.

52.     The Defendants also knew, or should have known, that the 2020 Fraudulent Sales and the 2022 Fraudulent Sales involved fraudulently inflated purchase prices given the short time between the sales and Robert-Ritter's purchases and the properties' location.

53.     Keller Williams intentionally misrepresented that the 2020 Fraudulent Sales and the 2022 Fraudulent Sales were all legitimate sales by posting information about the sales publicly on Bright/MLS, while knowing that the sales were entirely fraudulent.

54.     Surety Abstract intentionally misrepresented that the 2020 Fraudulent Sales were legitimate sales by (a) acting as title agent for the sales and recording deeds showing inflated sale values while knowing that the sales were entirely fraudulent, (b) preparing HUD-1 settlement sheets for sales while knowing that the sale were entirely fraudulent, and (c) facilitating the Genesis loan closings while Surety Abstract and Robert-Ritter were actively engaged in multiple fraudulent schemes.

55.     The Defendants made these intentional misrepresentations for the purpose of inducing Genesis to issue loans to Robert-Ritter or one of his affiliates and for the purpose of inducing an appraiser to issue inflated valuations for properties owned by Robert-Ritter that would be used in committing fraud against a lender like Genesis.

56.     As a direct and proximate result of the Defendants' intentional misrepresentations, Genesis suffered damage and loss by entering upon false pretenses into loans with Robert-Ritter and his entities, which loans have since defaulted and currently carry balances that far exceed the value of the security for such loans.

**COUNT TWO**
**AIDING AND ABETTING**
**(vs. All Defendants)**

57.     Genesis incorporates by reference all prior allegations of this Complaint.

58.    The Pennsylvania Supreme Court has recognized a civil cause of action for aiding and abetting fraud that is distinct from causes of action for fraud, negligence, breach of fiduciary duty, and conspiracy. *See Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 84, 87–88 (Pa. 2023).

59.    Keller Williams and Surety Abstract knew that both the 2020 Fraudulent Sales and the 2022 Fraudulent Sales were fraudulent straw sales designed to induce Genesis or another lender to issue loans, yet each aided and abetted Robert-Ritter's fraud.

60.    Keller Williams posted information about the 2020 Fraudulent Sales and the 2022 Fraudulent Sales publicly on Bright/MLS, while knowing that all the sales were entirely fraudulent.

61.    Surety Abstract acted as title agent, prepared fraudulent HUD-1s and prepared and recorded deeds for the 2020 Fraudulent Sales, and facilitated the closing of the Genesis loans while knowing that the 2020 Fraudulent Sales were entirely fraudulent, and that Robert-Ritter was engaged in fraud.

62.    Thereby, Keller Williams and Surety Abstract substantially assisted Robert-Ritter in defrauding Genesis by, among other things, making the 2020 Fraudulent Sales and the 2022 Fraudulent Sales publicly available on Bright/MLS and, with respect to Surety Abstract, by recording false deeds with respect to the 2020 Fraudulent Sales and by closing the Genesis loans.

63.    As aiders and abettors of Robert-Ritter's fraud, Keller Williams and Surety Abstract are liable for the damages caused by that fraud.

64.    As a direct and proximate result of Keller Williams' and Surety Abstract's conduct, Genesis has suffered damage and loss by making loans to Robert-Ritter and his affiliate entities based on false, fraudulent and misleading information, which loans have since defaulted and currently carry balances that far exceed the value of the security for such loans.

## COUNT THREE
## CONSPIRACY TO COMMIT FRAUD
### (vs. All Defendants)

65.     Genesis incorporates by reference all prior allegations of this Complaint.

66.     Keller Williams and Surety Abstract conspired and agreed with Robert-Ritter to execute a fraudulent scheme that victimized Genesis.

67.     Among other things, Keller Williams and Surety Abstract agreed with Robert-Ritter to post fraudulent information related to the 2020 Fraudulent Sales and the 2022 Fraudulent Sales.

68.     Surety Abstract agreed with Robert-Ritter to close, prepare fraudulent HUD-1s, and record fraudulent deeds for the 2020 Fraudulent Sales, and to facilitate the closing of the Genesis loans based on fraudulent information.

69.     The publishing of fraudulent information on Bright/MLS, the creation of fraudulent deeds and HUD-1s, and the facilitation of loan closings based on fraudulent information all violate, among other things, Pennsylvania common law related to fraud and the Pennsylvania Code which require that real estate agents "deal honestly and in good faith," 42 Pa.C.S. § 35.292(a)(2), and that agents "may not knowingly be a party to a material false or inaccurate representation in a writing regarding a real estate transaction in which he is acting in a representative capacity," 42 Pa.C.S. § 35.282(b).

70.     As a direct and proximate result of the Defendants' conspiracy, Genesis has suffered damage and loss by entering into loans with Robert-Ritter and his affiliate entities based on false, fraudulent and misleading information, which loans have since defaulted and currently carry balances that far exceed the value of the security for such loans.

**COUNT FOUR**
**NEGLIGENCE**
**(vs. All Defendants)**

71.    Genesis incorporates by reference all prior allegations of this Complaint.

72.    The Defendants' negligence in facilitating the 2020 Fraudulent Sales and the 2022 Fraudulent Sales for the purpose of causing inaccurate appraisals to be prepared caused significant harm to Genesis.

73.    The Defendants have a duty of reasonable care to their clients, the parties to the transactions they facilitate, and to the public who rely on the information they publish on Bright/MLS and in recorded deeds.

74.    Keller Williams has a duty of reasonable care to provide Genesis with accurate and not falsified information in real estate listings published on Bright/MLS.

75.    Real estate agents in Philadelphia are governed by the National Association of Realtor's Code of Ethics, which forbids misrepresentation regarding real estate transactions. Standard of Practice 2-4 of the Code of Ethics specifically forbids the "naming of a false consideration in any document." Pennsylvania law also requires that real estate agents "deal honestly and in good faith," 42 Pa. Code 35.292(a)(2), and states that agents "may not knowingly be a party to a material false or inaccurate representation in a writing regarding a real estate transaction in which he is acting in a representative capacity," 42 Pa. Code 35.282(b).

76.    Keller Williams breached these duties by publishing information about the 2020 Fraudulent Sales and the 2022 Fraudulent Sales on Bright/MLS which they knew was fraudulent or were in reckless disregard of the fraudulent nature of the information.

77.    Surety Abstract has a duty of reasonable care to Genesis as a party to a transaction to alert Genesis that its client, Robert-Ritter, was engaging in fraud, and to Genesis as a member

of the public to provide accurate and not falsified information in recorded deeds and on transaction documents, such as HUD-1s.

78.     Surety Abstract is a title agency whose agents are licensed by the Pennsylvania Insurance Department and regulated by the Pennsylvania Unfair Insurance Practices Act. Under this act, agents are prohibited from "engag[ing] in this state in any trade practice which is defined or determined to be an unfair method of competition or unfair or deceptive act or practice in the business." 40 P.S. § 1171.4. Further, Surety Abstract's agents are prohibited from "[m]aking, issuing, publishing or circulating in any manner [a] . . . statement containing any representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading." *See id.* at § 1171.1(a)(2)). Surety Abstract's agents are also prohibited from "[f]urnishing or offering to furnish all or any part of the time or productive effort of any employee of the title insurance company or title insurance agent to any person for any service unrelated to the title business." *See id.* at § 910-31(b)(6).

79.     Surety Abstract breached these duties, driven by its own financial interest, by among other things, recording deeds listing inflated sale prices for the 2020 Fraudulent Sales and by creating HUD-1s which contained transaction information that they knew was fraudulent or in reckless disregard of the fraudulent nature of the information for the 2022 Fraudulent Sales, and by failing to warn Genesis that Robert-Ritter had defrauded RFG just weeks prior to the Genesis loan closings.

80.     As a direct and proximate result of Keller Williams' and Surety Abstract's negligent conduct, Genesis suffered damage and loss by entering into loans with Robert-Ritter and his affiliate entities, which loans have since defaulted and currently carry balances that far exceed the value of the security for such loans.

**COUNT FIVE**
**NEGLIGENT SUPERVISION**
**(vs. All Defendants)**

81.    Genesis incorporates by reference all prior allegations of this Complaint.

82.    The employees and agents of the Defendants' negligent facilitation of the 2020 Fraudulent Sales, the 2022 Fraudulent Sales and the appraisals relied upon by Genesis caused significant harm to Genesis.

83.    The Defendants knew or should have known their employees and agents had committed fraud or acted negligently and that their conduct could harm a third party like Genesis.

84.    The Defendants failed to supervise their employees and agents despite those employees and agents being responsible for real estate transactions worth millions of dollars.

85.    Keller Williams knew that its agents posted information on Bright/MLS.

86.    Keller Williams' personnel held themselves out as agents of Keller Williams at all relevant times.

87.    Keller Williams' personnel had access to Bright/MLS because of their relationship with Keller Williams.

88.    Keller Williams' broker of record was responsible for every Bright/MLS listing made by a Keller Williams agent.

89.    Keller Williams' broker of record did not check any listings made related to the 2020 Fraudulent Sales or the 2022 Fraudulent Sales, nor did anyone else at Keller Williams.

90.    Keller Williams' failure to supervise its personnel was the direct and proximate cause of, among other things, the posting of false and fraudulent information to Bright/MLS. Keller Williams never corrected the published false and fraudulent information.

91. Surety Abstract knew that its employees are responsible for preparing and recording deeds and preparing HUD-1s.

92. Surety Abstract's employees who were responsible for Robert-Ritter's transactions were employed by Surety Abstract at all relevant times.

93. Surety Abstract was negligent in the supervision of its employees responsible for Robert-Ritter's transactions, allowing them to record false information in deeds and prepare false HUD-1s.

94. Even after Surety Abstract employees and Robert-Ritter executed a scheme to defraud RFG, Surety Abstract's owners failed to prevent Surety Abstract from closing another fraudulent loan transaction for Robert-Ritter with Genesis just weeks later.

95. As a direct and proximate result of Keller Williams' and Surety Abstract's negligent supervision, Genesis has suffered damage and loss by entering into loans with Robert-Ritter and his affiliate entities, which loans have since defaulted and currently carry balances that far exceed the value of the security for such loans.

WHEREFORE, Plaintiff demands a judgment in an amount to be determined at trial.


May 23, 2025                                    Respectfully submitted,

                                               _s/ Richard J. Zack_____
                                               TROUTMAN PEPPER LOCKE LLP
                                               Francis J. Lawall (PA Bar No. 43932)
                                               Richard J. Zack (PA Bar No. 77142)
                                               Zachary R. Epstein (PA Bar No. 330713)
                                               Julian Newton Weiss (PA Bar No. 329232)
                                               3000 Two Logan Square
                                               Eighteenth & Arch Streets
                                               Philadelphia, PA  19103-2799
                                               francis.lawall@troutman.com
                                               richard.zack@troutman.com
                                               zachary.epstein@troutman.com

julian.weiss@troutman.com
215.981.4000

*Counsel for Plaintiff Genesis Capital, LLC*